```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF PUERTO RICO


_____
                                    )
LUIS PEGUERO-REYES,                 )
                                    )
               Petitioner,          )
                                    )    CIVIL ACTION
          v.                        )    No. 19-1883-WGY
                                    )
UNITED STATES OF AMERICA,           )    (Related to Cr. No. 16-623)
                                    )
               Respondent.          )
_____)
```

YOUNG, D.J.[1]                                          July 25, 2023

**MEMORANDUM & ORDER**


**MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**

**I.   INTRODUCTION**

Luis Peguero Reyes ("Peguero"), acting pro se, petitions this Court under 28 U.S.C. § 2255 ("Section 2255") to vacate, set aside, or correct his sentence, entered after he pled guilty to 21 U.S.C section 952(a), 960 (a)(1) & (b)(1)(B), and 963, Conspiracy to Import a Controlled Substance (CT1).  Motion to Vacate ("Pet'r's Mot."), ECF No. 1.  The Court, having determined that no hearing is necessary, and after careful review of the submissions concludes that, for the reasons stated below, the motion premised upon ineffective assistance of counsel fails the two-pronged test under Strickland v.

---

[1] Of the District of Massachusetts, sitting by designation.

1

Washington, 466 U.S. 668 (1984), and therefore it is DENIED, with no certificate of appealability issued.

## II. LEGAL STANDARD

### A. Section 2255

Section 2255(a) provides for post-conviction relief to a federal prisoner if the petitioner is sentenced in violation of the Constitution, the court lacked jurisdiction to impose the sentence, the sentence exceeded the statutory maximum term, or if the sentence is otherwise subject to collateral attack. United States v. Addonizio, 442 U.S. 178, 185 (1979); see also David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). "The burden is on the petitioner to make out a case for section 2255 relief." Acevedo-Hernandez v. United States, 552 F. Supp. 3d 205, 207 (D.P.R. 2021) (Delgado-Colón, J.) (quoting David v. U.S., 134 F.3d 470, 474 (1st Cir. 1998)).

### B. Strickland

"The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel."[2] Lema v. United

---

[2] The Sixth Amendment to the Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his

States, 987 F.2d 48, 51 (1st Cir. 1993) (citing Strickland, 466 U.S. at 687 (1984)).  That said, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991) (citing Strickland, 466 U.S. at 687-88).  A defendant claiming deprivation of his Sixth Amendment right to effective assistance of counsel must prove: (1) counsel's performance "fell below an objective standard of reasonableness"; and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687-88 & 694;  see also United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010).  In assessing the adequacy of counsel's performance, Peguero "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'"  Manon, 608 F.3d at 131 (quoting Strickland, 466 U.S. at 690).  As for the second prong,

---

    favor, and to have the Assistance of Counsel for his
    defense.

U.S. Const. amend. VI.

or the prejudice factor under Strickland, a "reasonable probability is one sufficient to undermine confidence in the outcome. In making the prejudice assessment, [the court] focus[es] on the fundamental fairness of the proceeding." Id. (citation omitted) (internal quotation marks omitted). Unless Peguero makes both showings, the Court cannot rule that the conviction "resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687; see also Reyes-Vejerano v. United States, 117 F. Supp. 2d 103, 105 (D. P.R. 2000) (citing Bucuvalas v. United States, 98 F.3d 652, 658 (1st Cir. 1996) ("The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one.")). In sum, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

Strickland instructs, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. The "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v.

4

Louisiana, 350 U.S. 91, 101 (1955)).  Moreover, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  Id. at 691.  Finally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id. at 689.

   The same principles apply in the context of guilty pleas.  See Hill v. Lockhart, 474 U.S. 52, 58 (1985); see also United States v. Marquez-Perez, 835 F.3d 153, 165 (1st Cir. 2016) (citing Missouri v Frye, 566 U.S. 134, 144 (2012) ("The Sixth Amendment right to counsel entitles a defendant to effective counsel during plea negotiations.")).  In the context of a guilty plea, the first prong of the Strickland test is the standard of attorney competence described above.  Hill, 474 U.S. at 58.  "The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  Id. at 59.  "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."  Lafler v. Cooper, 566 U.S. 156, 163 (2012) (citing Frye, 566 U.S. at 148); see also Frye, 566 U.S. at 147

5

("To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."). "In other words, in order to satisfy the 'prejudice' requirement, [Peguero] must show that there is a reasonable probability that, but for counsel's errors, [(1)] he would not have pleaded guilty and [(2)]would have insisted on going to trial." Hill, 474 U.S. at 59.  The Supreme Court reiterated that, as stated in Strickland, "these predictions of the outcome at a possible trial, where necessary, should be made objectively ..."  Hill, 474 U.S. at 59-60.

### III. ANALYSIS

Peguero claims first that he "waived all pretrial motions, and full presentenced investigation, with the fervent belie[f] that he would benefit a four level downward [reduction] under the Fast-Track Program," Pet'r's Mot., Ex. 1, Memorandum In Support of Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 3, ECF No. 1-1, and further that "[c]ounsel's failure to adequately advise Peguero Reyes that the applicability of the 'fast-track' program would not apply and failure to then advise Peguero Reyes to move to withdraw from the plea at the arraignment was constitutionally deficient." Id. at 4.  He then brings a second claim, alleging that he

6

should have benefited from the fast-track program. See Id. at 5-6. Both claims fail.

### A. Petitioner's Ineffective Assistance of Counsel Claim Fails under both Strickland prongs

Peguero asserts that his guilty plea was made solely under the belief that if he pled guilty at arraignment he would "benefit [from] a four level downward departure under the 'Fast-Track' Program." Pet'r's Mot. 4. He further claims that if he could not benefit from the program, counsel should have advised him to "withdraw from [sic] the plea at the arraignment" and failing to do so renders his counsel's performance "constitutionally deficient." Id. These assertions are contradicted by the record.

The record belies Peguero's contention that his plea was made under the expectation of the four-level fast track reduction that his counsel allegedly promised him. Thus, Peguero cannot demonstrate that counsel's performance fell below an objective standard of reasonableness, nor that he suffered any prejudice.

During the change of plea hearing, the Court first asked Peguero, under oath, if he was fully satisfied with the legal services of both his lawyers, and specifically counsel Joaquin Perez; he responded affirmatively. Change of Plea Hearing Transcript ("Plea Tr.") 3, 7, Cr. ECF No. 207, 3:16-cr-00623-

CCC. The Court then asked counsel Perez whether he had thoroughly explained to defendant all the terms and conditions of the plea agreement and whether in his professional opinion, the defendant had a good understanding of all the terms and conditions of the plea agreement, to which counsel responded affirmatively. Id. at 7.

To the question: "Has anybody offered you anything of value in order to induce you plead guilty in this case?" Peguero replied "No, sir." Id. at 17. To the question "Has anybody promised you, assured you or guaranteed to you that you're going to receive a specific or a particular sentence in this case if you enter a guilty plea?," Peguero replied "No, sir". Id.

The Magistrate Judge further inquired whether Peguero had a reasonable opportunity to discuss with his counsel all the terms and conditions of the plea agreement prior to the change of plea hearing, to which Peguero replied affirmatively. Id. at 19.

The Magistrate Judge asked AUSA Gonzalez to provide a summary of the Sentencing Guideline calculations and of the sentence recommendation to which the parties had agreed as part of the plea agreement. Id. at 24.

> MS. GONZALEZ: Certainly. Your Honor, the guideline application which the parties are recommending to the Court are as follows: A base offense level of 30 based on the fact that the amount stipulated is five

> kilograms of cocaine and less than fifteen; that is Guideline 2.D1.1C6.
>
> An addition of two points because the offense involves the importation of narcotics into the United States and then the acceptance of responsibility guideline as per 3E1.1 would result in a deduction of three points, leaving the base offense level at 29.
>
> The parties have not stipulated a criminal history category in this case. Defendant has knowingly and voluntarily agreed that if sentenced pursuant to the recommended sentence recommendation, he will waive his right to an appeal. Defendant is aware that his guilty plea will have an impact as to his Immigration status. The defendant agreed to forfeit $16,000 which are involved in the offense and he has also agreed that he will pay his special monetary assessment fee of $100 prior or upon sentencing.

Id. at 24-25.

The Magistrate Judge then turned to Peguero to evaluate his understanding of the Sentencing Guideline calculations and of the sentence recommendation.

> MAGISTRATE JUDGE: So, Mr. Peguero, were you able to understand the prosecutor's summary of the sentencing guideline calculations and of the sentence recommendation?
>
> DEFENDANT: Yes, sir.
>
> MAGISTRATE JUDGE: Do you understand that the United States Sentencing Guidelines are advisory, in other words, they're not binding or mandatory on the Court?
>
> DEFENDANT: Yes, sir.
>
> MAGISTRATE JUDGE: Do you understand that even if the Court imposes a sentence that is more severe than what the advisory guidelines recommend or suggest, you would not be able to withdraw a guilty plea for that reason alone?
>
> DEFENDANT: Yes, sir.

Id. at 25-26.

Further, the Magistrate Judge reiterated his previous questions as to the circumstances of the plea agreement:

> MAGISTRATE JUDGE: Has anybody made you any promise or offer outside of what's contained in this plea agreement?
>
> DEFENDANT: No, sir.
>
> MAGISTRATE JUDGE: Has anybody forced you, threatened you or coerced you to enter a guilty plea in this case?
>
> DEFENDANT: No, sir.

Id. at 28-29.  Ultimately, the Magistrate Judge found that Peguero was "fully aware of the consequences of his guilty plea and the maximum penalties applicable to Count 1 of the indictment."  Id. at 34.  He further declared: "I also find that his plea has been intelligently and knowingly made and I find that there is a basis in fact as to every element of the offense charged and I find the defendant's plea has been voluntarily made."  Id.

Peguero's alleged reliance on the fast track four level reduction is contradicted by the change of plea hearing where, under oath, he intelligently and knowingly laid out his contemporaneous understanding of the plea agreement.  Peguero did not challenge the sentencing guidelines or mention a promise made by his counsel.  Indeed, consistent with the change of plea colloquy, at the sentencing hearing held on Friday, March 15, 2019, when Peguero was asked whether there was "any information

10

that is important to you and that is relevant to your sentencing hearing," Sentencing Hearing Transcript 6, ECF No. 206, Peguero only chose to express the following: "I'd like to thank Joaquin Perez and attorney Irizarry. I'm before you and before God accepting the mistakes I made, and I apologize for my mistake and I admit my mistake. That would be all. Good afternoon." Id. at 7.

In his own words, Peguero averred at being satisfied with his counsel and attorney's assistance. These are not the actions of one who has been induced into taking a plea deal with which he does not agree. Peguero has provided no evidence of inducement beyond his own statements in the petition that contradict his prior testimony, which the Court rejects. See United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) ("[T]he court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets."). The evidence before the Court confirms Peguero entered his plea knowingly and voluntarily, and he fails to demonstrate that his counsel was ineffective.

Even had Peguero shown that counsel's performance fell below "an objective standard of reasonableness," Strickland, 466 U.S. at 668, he cannot demonstrate prejudice with respect to any of his claims. See Id. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction ... resulted

11

from a breakdown in the adversary process that renders the result unreliable."); see also Reyes-Vejerano, 117 F. Supp. 2d at 106 (noting petitioner's "burden of proving both prongs of this test, and the burden is a heavy one."). The Presentence Investigation Report guidelines calculations resulted in a total offense level of 27, which with a Criminal History Category of I, yielded a Guideline Sentencing Recommendation ("GSR") of 70-80 months. Presentence Investigation Report ("PSR") 13, ECF No. 123, 3:16-cr-00623-CCC. Peguero objected to the PSR, Cr. ECF No. 142, and filed a sentencing memorandum requesting leniency based on the hardship Peguero went through while incarcerated in St. Marteen, during and after Hurricane Irma. ECF No. 157, 3:16-cr-00623-CCC.

Peguero's objection did not request a four level reduction under the Fast-Track program. At sentencing, the court determined that the PSR had correctly calculated Peguero's offense level but added a reduction of two points pursuant to § 2D1.1(b)(18) resulting in a total offense level of 25 and a GSR of 57 to 71 months. Peguero was ultimately sentenced to 57 months' imprisonment. ECF No. 181, 16-cr-00623-CCC. He did not appeal.

On this record, Peguero has not demonstrated a reasonable probability that but for counsel's purported error, he would have not pleaded guilty and insisted on going to trial. In

short, Peguero has not demonstrated that a reasonable probability that the outcome of the plea process would have been different had he received different advice from counsel. See Lafler, 566 U.S. at 163 ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."); see also Frye, 566 U.S. at 148 (quoting Hill, 474 U.S. at 59) ("In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'").

Rather, on this record, the Court finds that Peguero benefited from counsel requesting leniency based on the hardship he went through while incarcerated on St. Marteen, during and after Hurricane Irma, and was sentenced on the lower end of the GSR of 57 to 71 months.  Peguero admitted under oath at the change of plea hearing that he understood the parties were recommending a sentence of 120 months' imprisonment, which was the mandatory minimum sentence for his offense.  Peguero was facing "[a] term of imprisonment of no less than ten years and not more than life in prison, a fine not greater than ten million dollars and a term of supervised release of no less than five years but no more than life, in addition to any term of

13

imprisonment." Plea Tr. at 24.  Viewing Peguero's situation objectively, see Hill, 474 U.S. at 59-60 (citing Strickland, 466 U.S. at 695) ("these predictions of the outcome at a possible trial, where necessary, should be made objectively ..."), this Court concludes that Peguero cannot establish with reasonable probability that he would have rejected the plea agreement and gone to trial.  Therefore, Peguero has not and cannot meet Strickland's prejudice prong.  Frye, 566 U.S. at 148.  His motion fails under both Strickland prongs.  The claim for ineffective assistance of counsel is therefore denied.

Additionally, Peguero has not even demonstrated that he would have been eligible under the Fast-Track program, "especially because he was convicted of drug trafficking and not illegal reentry."  United States's Resp. to Pet'r's Mot. to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 7, ECF No. 8 (citing Memorandum from James M. Cole for U.S. Attorneys (Jan. 31, 2012) 3), available at www.justice.gov/dag/fast-track-program.pdf).  Accordingly, this claim is denied.

## IV.  CONCLUSION

For the reasons stated above, Peguero has failed to meet his burden under Strickland, and therefore, the Court DENIES the Motion to Vacate his sentence (ECF No.1) under 28 U.S.C. § 2255.

14

In view of the extensive and thorough plea colloquy, this Court cannot in good conscience authorize the issuance of a certificate of appealability.  Accordingly, pursuant to 28 U.S.C. § 2253(c)(2), this Court does not authorize a certificate of appealability where there has been no "substantial showing of the denial of a constitutional right."

**SO ORDERED.**

/s/ William G. Young  
WILLIAM G. YOUNG  
JUDGE  
of the  
UNITED STATES[3]

---

[3] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.